UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- :
STYLELINE STUDIOS INTERNATIONAL LIMITED, :
              Plaintiff,                                              :      Case No.: 25-4389
                                                             :
              -against-                                             :
                                                             :
JAY LITVACK, and LILLIAN LITVACK          :
                Defendants.                                    :
                                                             :
---------------------------------------------------------------- :

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Styleline Studios International Limited ("**Plaintiff**" or "**Styleline International**"), by and through its attorneys, Steptoe & Johnson PLLC, for its Complaint against Defendants Jay Litvack and Lillian Litvack (together "**Defendants**" or "**Litvacks**") allege as follows.

A former business partner and his spouse are wrongfully holding over control of domain names that rightfully belong to Plaintiff.

Styleline International is unequivocally the owner of the J/SLIDES trademark. Among other things, it holds a trademark registration certificate for the J/SLIDES trademark at the United States Patent & Trademark Office.

Defendants, Jay Litvack, and his spouse, Lillian Litvack, maintain domain name registrations for jslides.com and jslidesfootwear.com -- even though (a) neither of them have any rights, title, or interest in or to the J/SLIDES brand; and (b) both of them are fully aware of Styleline International's exclusive trademark rights.

Notably, Defendant Jay Litvack previously owned the J/SLIDES trademark by and through his entity JSL Studio Intl LLC. As Defendants well know, Mr. Litvack transferred his intellectual property rights in the J/SLIDES trademark to Styleline International over a decade ago.

1

For several years, Plaintiff and Defendant Jay Litvack were involved together in the design and distribution of J/SLIDES branded footwear. Unfortunately, as discussed herein, the deceitful and malicious conduct of Jay Litvack led to the downfall of business relations between the Parties who no longer work together.

However, following dissolution of the relationship, Defendants refused to transfer control of the jslidesfootwear.com domain name unless various untenable business concessions were made by Plaintiff. At that time, Defendants hid, or otherwise failed to disclose, the existence of a related domain name <jslides.com> registered by Mr. Litvack's wife, Defendant Lillian Litvack.

After repeated attempts to resolve the dispute through settlement discussions, Plaintiff filed a Complaint with the ADR Forum under the Uniform Domain-Name Dispute-Resolution Policy ("**UDRP**"). The rules followed by the UDRP panel materially differ from the law under the Anticybersquatting Consumer Protection Act ("**ACPA**"). Specifically, the UDRP panel will only consider a domain name registrant's bad faith *at the time the domain name was originally registered*. Conversely, the ACPA protects brand owners from bad-faith use of domain names after the date of registration. Thus, despite Jay Litvack and his associated company expressly agreeing to transfer the intellectual property rights of the J/SLIDES brand to Plaintiff and misrepresenting the ownership identities of the domain names, Plaintiff's only recourse is to pursue relief from this Court.

As such, Styleline International brings suit against Defendants to confirm and obtain ownership of two internet domain names - <jslidesfootwear.com> and <jslides.com>.

Worse yet, Defendants are operating various social media accounts using the J/SLIDES Marks and, on information and belief, misrepresenting the intellectual property rights held by Plaintiff to advertising platforms.

2

While Styleline International would prefer to focus its efforts and resources on designing, manufacturing, and distributing footwear products under its J/SLIDES brand, the Defendants' repeated attempts to destroy the goodwill of the J/SLIDES brand and their refusal to reasonably discuss an amicable resolution, have left Plaintiff with no choice but to seek legal redress for their bad and malicious conduct. Styleline International has been left with no choice but to bring this action to recover its valuable domain names and to prevent Defendants from continuing to syphon off the goodwill associated with Styleline International's J/SLIDES brand that is essential to its fashion business.

Accordingly, Plaintiff brings this action under 15 U.S.C. § 1125(d) and New York statutory and common law for violation of the ACPA, tortious interference with business expectancy, commercial disparagement, unlawful deceptive acts and practices, and false advertising. In addition to monetary damages, Plaintiff seeks the ownership of the <jslides.com> and <jslidesfootwear.com> domain names.

The conduct of Defendants has and is continuing to cause harm to Plaintiff in the State of New York and this District.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

2. This Court has subject matter jurisdiction over the state law claims because there is complete diversity of citizenship between Styleline International and Defendants and the damages sought are in excess of $75,000 and because the claims arrested herein are so

related to the claims in this action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over Defendants because they reside in the State of New York.

4. Venue is proper in this Court because the Defendants are subject to the personal jurisdiction of this Court, reside in this District, and a substantial part of the events giving rise to Plaintiff's claims and causing Plaintiff's injuries occurred and continue to occur within this District.

## THE PARTIES

5. Plaintiff is a Hong Kong private limited company with its principal place of business at Unit 7F-15, 7-F, Valiant Industrial Centre, 2-12 Au Pui Wan Street, Fo Tan, Sha Tin, New Territories, Hong Kong S.A.R.

6. Defendant Jay Litvack is an individual and a citizen of the United States who resides, on information and belief, at 50 East 89th Street, Unit 23B, New York, NY 10128.

7. Defendant Lillian Litvack is the spouse of Defendant Jay Litvack and is an individual and a citizen of the United States who resides, on information and belief, at 50 East 89th Street, Unit 23B, New York, NY 10128.

## FACTS AND CIRCUMSTANCES GIVING RISE TO THE CLAIMS ALLEGED

8. By way of background, Lillian Litvack originally registered the domain name <jslides.com> on July 20, 2013.

9. Jay Litvack, the spouse of Lillian Litvack, originally registered the domain name <jslidesfootwear.com> on August 15, 2013.

10. Jay Litvack, through an associated company, filed a trademark application for "J/SLIDES" with the United States Patent and Trademark Office ("**USPTO**") on September 3, 2014.

11. In or around 2014, Jay Litvack, Tina Ey Vean Liu ("**Liu**"), and Dimitri Mavridakis ("**Mavridakis**") decided to work together in order to import, distribute, market, and sell footwear bearing the J/SLIDES Mark in the United States.

12. Jay Litvack, Liu, and Mavridakis, formed a New York based company, Styleline Studios LLC ("**Styleline NY**"), in December 2014.

13. A Trademark Assignment wholly assigning the J/SLIDES Mark to Plaintiff was recorded with the USPTO on March 31, 2015.

14. Through an IP Rights Transfer Agreement executed on April 2, 2015 between Jay Litvack, an associated company JSL Studio International, LLC ("**JSL Studio**"), and Plaintiff, Jay Litvack and JSL Studio agreed to assign "all Intellectual Property Rights subsisting in the Trade Mark and the US Trademark Application" to Plaintiff. A copy of the IP Rights Transfer Agreement is submitted herewith as Appendix A.

15. In or around 2018, disputes arose between Jay Litvack and Plaintiff over issues regarding whether Jay Litvack had acted beyond his authority. For example, on information and belief, Jay Litvack attempted to sell the IP Rights of the J/SLIDES brand to various third parties without the knowledge and/or consent of Plaintiff.

16. In or around November 2023, Plaintiff terminated its business relationship with Jay Litvack.

17. Plaintiff sent Jay Litvack and Styleline NY cease and desist letters on December 14, 2023 advising Jay Litvack and Styleline NY that they were no longer authorized to use the J/SLIDES Mark on or in connection with footwear in the United States.

18. Despite receiving the cease and desist communication, Jay Litvack continued to cause Styleline NY to use the J/SLIDES Mark in connection with the manufacture, marketing, and sale of footwear.

19. On February 1, 2024, Liu and Mavridakis voted to dissolve Styleline NY pursuant to their Operating Agreement.

20. In September 2024, Plaintiff and Hilldun Corporation ("**Hilldun**"), among others, were part of an intellectual property dispute involving the J/SLIDES brand resulting from a factoring agreement.

21. As a result of a resolution between Hilldun and Plaintiff, Plaintiff agreed to permit agents of Hilldun to sell or otherwise dispose of the existing inventory owned by Styleline NY on the <jslidesfootwear.com> domain name for a limited period of 245 days that began on October 30, 2024. A copy of the Hilldun resolution agreement is submitted herewith as Appendix B.

22. Jay Litvack misrepresented the ownership of the <jslidesfootwear.com> domain name that formed the basis of the executed agreement with Hilldun.

23. Jay Litvack concealed, or otherwise failed to disclose, the existence of the <jslides.com> domain name despite knowing of its existence.

24. At no point after execution of the IP Rights Transfer Agreement on April 2, 2015 were Defendants entitled to the ownership of the <jslides.com> and/or <jslidesfootwear.com> (collectively "the **Domain Names**") in dispute herein.

25. Between April 2, 2015 and October 30, 2024, Defendants had no rights in their individual capacity to the J/SLIDES trademark.

26. From at least as early as April 2, 2015, Defendants were aware that Plaintiff, or another corporate entity, had ownership rights in the J/SLIDES trademark.

27. Since at least as early as April 2, 2015, the Domain Names have been used to sell products under the J/SLIDES trademark.

28. Despite knowing that the Domain Names were used to sell products under the J/SLIDES trademark, Defendants renewed or otherwise maintained registrations for the Domain Names in their individual capacities.

*Registration of the Domain Names*

29. Specifically, on July 20, 2013, Lillian Litvack registered the domain name, <jslides.com>, through the domain registrar, NameSilo. The existence of the <jslides.com> domain name was not disclosed to Plaintiff by Defendants and was only discovered by Plaintiff in or around March 2025. According to a Domain Name Dispute Verification Request received in connection with a previously-filed UDRP Complaint, the current registration for the <jslides.com> domain name expires on July 20, 2025.

30. On August 15, 2013, Jay Litvack registered a domain name, <jslidesfootwear.com>, through the domain registrar, GoDaddy. The current registration for the <jslidesfootwear.com> domain name expires on April 19, 2027.

31. At no point did Plaintiff agree to either of the Defendants owning the Domain Names. Despite having transferred the aforementioned intellectual property rights to Plaintiff, Jay Litvack and Lillian Litvack continue to wrongfully hold control over the Domain Names.

32. ICANN, or the Internet Corporation for Assigned Names and Numbers, is a non-profit organization that manages the Domain Name System ("**DNS**"). Both Domain Names at issue in the present dispute are registered through ICANN-accredited registries.

33. ICANN-accredited registries allow renewals of domain names in integer years (no month-to-month renewals). In any event, ICANN's Registry Agreement limits any single domain's expiration date to no more than 10 years in the future.

34. In light of the July 20, 2025 expiration of the <jslides.com> domain name's registration and the 10 year registration term limit, Lillian Litvack had to have re-registered, or renewed, <jslides.com> at least once on or after July 20, 2015. Similarly, the April 19, 2027 expiration of the <jslidesfootwear.com> domain name's current registration indicates that Jay Litvack had to have re-registered <jslidesfootwear.com> on or after April 19, 2017.

35. As such, both Domain Names necessarily were re-registered at least once after the U.S. Trademark Registration No. 4,746,857 of "J/SLIDES" was assigned to Plaintiff on March 31, 2015 and after the execution of the IP Rights Transfer Agreement between Styleline Studios International, Jay Litvack, and Jay Litvack's associated company on April 2, 2015.

36. Even after the execution of the IP Rights Transfer Agreement, at no point was ownership of either of the Domain Names transferred to Plaintiff.

37. On information and belief, during at least the period from December 2014 to October 30, 2024, Defendants wrongfully failed to report and/or distribute any proceeds from sales on the Domain Names.

38. Plaintiff was forced to register the inferior domain name <shopjslides.com> to market and sell its authentic, high-quality goods under the J/SLIDES Marks in response to Defendants' failure and refusal to transfer ownership of <jslidesfootwear.com>.

*Plaintiff's Ownership of a Valid and Distinctive Trademark*

39. Plaintiff is responsible for the design, manufacturing, marketing, distribution, and sales of footwear that is sold in many countries of the world, including the United States. Plaintiff owns and uses several trademark registrations in the United States and throughout the world to promote its J/SLIDES brand, including the filings below:

   - **J/SLIDES** (U.S. Reg. No. 4,746,857) covering "footwear" in Class 25.
   - **J/SLIDES** (CA Reg. No. TMA1005019) covering "Footwear, namely, shoes, sneakers, espadrilles, sandals and boots" in Class 25.
   - **J/SLIDES** (U.K. Reg. No. UK00914629943) covering "footwear" in Class 25.
   - **J/SLIDES** (U.K. Reg. No. UK00003104508) covering "footwear" in Class 25.
   - **J/SLIDES** (UK Reg. No. UK00915054265) covering "Handbags; Bags; Shoulder bags; Pack sacks; Shopping bags, carrier bags; Valises" in Class 18 and "Clothing and headwear" in Class 25.
   - **J/SLIDES** (EUIPO Reg. No. 015054265) covering "Handbags; Bags; Shoulder bags; Pack sacks; Shopping bags, carrier bags; Valises" in Class 18 and "Clothing and headwear" in Class 25.
   - **J/SLIDES** (EUIPO Reg. No. 014629943) covering "footwear" in Class 25.
   - **J/SLIDES** (KR Reg. No. 4011505380000) covering "footwear" in Class 25.
   - **URBAN SPORT BY J/SLIDES** (U.S. App. No. 98/366,185) covering "Boots; Footwear; Loafers; Sandals; Shoes; Slippers; Sneakers; Espadrilles; Flip-flops for use as footwear; Stiletto heels; Ladies' boots; Leather boots; Motorcyclist boots; Mountaineering boots; Snow boots" in Class 25.

40. Notably, in the United States, Plaintiff owns Registration No. 4746857 ("**the 857 Registration**") on the Principal Trademark Register of the USPTO for the J/SLIDES Mark.

The 857 Registration is incontestable. Pursuant to 15 U.S.C. § 1065, Plaintiff's incontestable registration is conclusive evidence of the validity of the J/SLIDES Mark as well as Plaintiff's ownership and exclusive right to use the mark in commerce on or in connection with the aforementioned goods.

41. Plaintiff, by and through its predecessors in interest, has used the trademark J/SLIDES and similar variations thereof (collectively the "**J/SLIDES Marks**") since at least as early as September 2012 in connection with a wide variety of footwear merchandise and online retail store services featuring footwear (the "**J/SLIDES Goods & Services**").

42. As a result of the widespread and continuous marketing efforts and the excellence of the underlying products and services, the public has come to know, rely on, and recognize the J/SLIDES Marks as strong source identifiers for the J/SLIDES Goods & Services.

43. Plaintiff has invested substantial time, money, and resources in developing and providing the J/SLIDES Goods and Services under the J/SLIDES Marks, resulting in significant industry and consumer recognition and valuable goodwill in the footwear marketplace.

44. Plaintiff's J/SLIDES Mark is distinctive to both the consuming public and Plaintiff's trade.

45. Plaintiff owns exclusive rights in and to the J/SLIDES Marks in the United States and across the globe.

*Domain Names are Identical or Confusingly Similar to Plaintiff's Marks*

46. The Domain Names at issue, <jslidesfootwear.com> and <jslides.com>, incorporate every letter contained in Plaintiff's J/SLIDES Marks.

47. While the forward slash present in Plaintiff's Marks is absent from the Domain Names, punctuation marks are often deemed irrelevant in domain names due to technical constraints.

48. The Domain Name System (DNS) is a hierarchical and distributed name service that provides a naming system for resources on the Internet. The DNS relies on a restricted character set to maintain functionality and compatibility across different systems and implementations, thereby setting specific limitations on the characters allowed in domain names. As such, certain typographical conventions, such as a backslash, that are common in other contexts cannot be used in DNS.

49. The domain name <jslidesfootwear.com> incorporates the substantive portion of Plaintiff's Marks in its entirety and merely adds the word "footwear" to the end of Plaintiff's Marks. The simple addition of the descriptive or generic term "footwear" to the J/SLIDES Marks in the domain <jslidesfootwear.com> fails to mitigate the confusing similarity between the Plaintiff's registered Marks and the <jslidesfootwear.com> domain name.

50. Instead, the addition of "footwear" in the domain name enhances the confusing similarity, as the word identifies the products and/or services offered by Plaintiff.

*The Domain Names were Registered with a Bad Faith Intent to Profit*

51. Defendants have exhibited and continue to exhibit bad faith intent to profit from the Domain Names. At least between December 2023 and October 2024, Defendants used the Domain Names in a transparent effort to pass themselves off as Plaintiff.

52. Between October 2024 through present, Plaintiff has permitted liquidation of inventory by Hilldun's agents via the jslidesfootwear.com domain name. However, Plaintiff did not permit Defendants to retain ownership of the Domain Names. Moreover, Defendants acted

in bad faith by misrepresenting the ownership of the Domain Names at the time the liquidation agreement was introduced to Plaintiff.

53. At least by way of her marital relationship with Jay Litvack, Lillian Litvack had intimate knowledge of the trademark registrations owned by Plaintiff, and Lillian Litvack had knowledge of the IP Transfer Agreement executed between her husband, Jay Litvack, his associated company, JSL Studio, and Styleline International.

54. Defendants have no rights or legitimate interests in the Domain Names.  Defendants are operating the Domain Names for commercial purposes.  As is facially apparent from the website hosted at the Domain Names and on information and belief, Defendants continuously offered J/SLIDES branded products for commercial gain during the existence of the Domain Names.

55. At no point did Plaintiff agree to Defendants' ownership of the Domain Names.  Plaintiff has not authorized, licensed, or consented to Defendants' use of the J/SLIDES Marks in the Domain Names. Moreover, Plaintiff has not authorized, licensed, or consented to Defendants' renewal of the registrations of the Domain Names.

56. As is facially apparent from the websites hosted at the Domain Names, the Domain Names have been used to promote, market, and sell Plaintiff's footwear products on behalf of Plaintiff as the trademark owner.

57. Furthermore, during at least the period of December 2023 to October 30, 2024, the Domain Names were not being used in connection with the bona fide offering of goods or services. During at least this period, Defendants had no legitimate reason or good faith basis to use the J/SLIDES Mark on or in connection with the Domain Names and its use of the Mark

in the Domain Names is intended to trade off of and profit from the goodwill and reputation of Plaintiff and its J/SLIDES Mark.

58. On information and belief, Defendants seek to usurp consumers looking for genuine merchandise offered under the J/SLIDES Marks by misdirecting traffic to its webpage located at the <jslidesfootwear.com> domain name. Defendants further use the <jslides.com> domain name to redirect traffic to the <jslidesfootwear.com> domain name.

59. Despite numerous requests, Defendants have wholly failed and refused to transfer the registration of the <jslidesfootwear.com> domain name to Plaintiff. Instead, Jay Litvack used his ownership of the <jslidesfootwear.com> domain name as a bargaining tool with the Plaintiff. In response to Plaintiff's requests to transfer ownership of the <jslidesfootwear.com> domain name, Jay Litvack, through his legal counsel, indicated he would transfer ownership of the domain name if, among other demands, Plaintiff would extend his ability to deplete inventory on the <jslidesfootwear.com> domain name from July 1, 2025 to December 31, 2025.

60. As highlighted herein, there is not just one domain name at issue in the present dispute. Defendants re-registered *multiple* domain names which Defendants knew were identical or confusingly similar to Plaintiff's distinctive Marks.

61. In light of the IP Transfer Agreement executed between Jay Litvack and Plaintiff, Defendants knew, or should have known, at the time of re-registration of the domain names that the J/SLIDES Marks belonged to Plaintiff.

*Social Media and Advertising Platforms*

62. In or around January 2025, Plaintiff created a Google Ads Account to rightfully market the sale of J/SLIDES branded footwear on its <shopjslides.com> domain name. The

advertising campaigns run on Plaintiff's Google Ads Account were successful and resulted in consumer sales.

63. Defendants are associated with various social media platforms that use the Plaintiff's J/SLIDES Mark. Such social media platforms include, for example, Instagram, Facebook, X, TikTok, Pinterest, and YouTube.

64. In particular, the Defendants' Instagram account was named "@jslidesfootwear." In or around January 2025, the Instagram account associated with Defendants began leaving misleading and disparaging comments on numerous posts of the Plaintiff's Instagram account, @shopjslides. Such comments equate to false advertising, as Defendants suggest that it is the "original" J/SLIDES and that the Plaintiff is not selling authentic J/SLIDES merchandise. True screenshots of such comments are reproduced below.







65. In timely accordance with Defendants' malicious behavior on various social media platforms, the Plaintiff received a notice that its Google Ads Account was flagged for violating the Counterfeit Goods Policy on January 24, 2025. The Plaintiff's Google Ads Account was subsequently suspended.

66. On information and belief, Defendants reported the Plaintiff's Google Ads Account using misrepresentations of the intellectual property rights held by the Plaintiff.

67. Despite numerous attempts by Plaintiff to appeal its account suspension, the Plaintiff's Google Ads Account remains suspended. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered immediate and irreparable harm.

68. On March 7, 2025 counsel for Plaintiff submitted reports to the various social media platforms informing them of Defendants' violation of Plaintiff's intellectual property rights. The Facebook, Pinterest, TikTok, and YouTube Accounts associated with the Defendants were subsequently removed by the respective platforms. However, the Instagram and X accounts associated with the Defendants improperly remain active.

69. On information and belief, in an attempt to avoid removal, Defendants changed their Instagram account name to @styleline_footwear on March 14, 2025 prior to Instagram being able to take action on Plaintiff's original infringement report.

70. Plaintiff is the owner of the trademark application for "STYLELINE" in the United States. *See*, U.S. App. No. 99/086,569. As such, Plaintiff submitted an additional infringement report to Instagram and Facebook; however, the infringing accounts remain active and Plaintiff has not received any correspondence from the respective social media platforms on the matter.

## COUNT ONE

**(Cybersquatting 15 U.S.C. § 1125(d))**

71. Plaintiff repeats and realleges paragraphs 1 through 70 hereof, as if fully set forth herein.

72. On information and belief, Defendants have committed the foregoing acts of cybersquatting with full knowledge of Plaintiff's rights in and to the J/SLIDES Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

73. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court.

74. Plaintiff is entitled to, among other relief, injunctive relief, ownership of the Domain Names, and statutory damages under 15 U.S.C. § 1125(d), together with prejudgment and post-judgement interest.

## COUNT TWO

**(Tortious Interference with Business Expectancy under New York Common Law)**

75. Plaintiff repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein.

76. On information and belief, Defendants have made misrepresentations and submitted a report aimed at having an advertising service suspend the Plaintiff's Account.

77. By the acts described above, Defendants have engaged in tortious interference with business expectancy in violation of the common law of the State of New York.

78. Defendants' acts have caused and will continue to cause, unless restrained by this Court, serious, immediate, and continuing irreparable injury to Plaintiff, for which Plaintiff has no remedy at law.

## COUNT THREE

### (Commercial Disparagement under New York Common Law)

79. Plaintiff repeats and realleges paragraphs 1 through 78 hereof, as if fully set forth herein.

80. On information and belief, Defendants have submitted a report to an advertising service alleging Plaintiff's Account was associated with counterfeit goods.

81. By the acts described above, Defendants have engaged in commercial disparagement in violation of the common law of the State of New York.

## COUNT FOUR

### (Unlawful Deceptive Acts and Practices under NY Gen Bus L § 349)

82. Plaintiff repeats and realleges paragraphs 1 through 81 hereof, as if fully set forth herein.

83. On information and belief, Defendants have made representations that serve to mislead a reasonable consumer.

84. By the acts described above, Defendants have engaged in unlawful deceptive acts and practices in violation of NY Gen Bus L § 349.

## COUNT FIVE

### (False Advertising under NY Gen Bus L § 350)

85. Plaintiff repeats and realleges paragraphs 1 through 84 hereof, as if fully set forth herein.

86. On information and belief, Defendants have made representations that fail to reveal material facts, including the Plaintiff's ownership of the J/SLIDES Marks.

87. By the acts described above, Defendants have engaged in false advertising in violation of NY Gen Bus L § 350.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. Temporarily, preliminarily, and permanently enjoining and restraining Defendants from transferring ownership of the Domain Names;

2. Transferring ownership of the Domain Names to Plaintiff;

3. Monetary damages in an amount to be determined at trial caused by Defendants' violation of the Anticybersquatting Consumer Protection Act pursuant to 15 U.S.C. § 1125(d) together with interest thereon at the highest rate allowed by law;

4. Monetary damages in an amount to be determined at trial caused by Defendants' in violation of New York common law, together with interest thereon at the highest rate allowed by law;

5. Ordering Defendants to make all books, records, including electronic records, and other documents concerning sales made on the Domain Names available to Plaintiff for review;

6. Awarding Plaintiff, at Plaintiff's election, statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just pursuant to 15 U.S.C. § 1117(d); and

7. Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Styleline Studios International Limited hereby demands, pursuant to Fed. R. Civ. P. 38, a trial by jury of all issues so triable.

                                                  */s/Shane M. Rumbaugh*
                                                  Shane M. Rumbaugh
                                                  shane.rumbaugh@steptoe-johnson.com
                                                  Steptoe & Johnson PLLC
                                                  One PPG Place, Suite 3300
                                                  Pittsburgh, PA 15222
                                                  Telephone: 412-504-8010

Date: May 23, 2025