# APPENDIX A

Execution copy

Dated this 2nd day of April 2015

between

(1) JSL STUDIO INTL. LLC

and

(2) STYLELINE STUDIOS INTERNATIONAL LIMITED

and

(3) JAY STEVEN LITVACK

---

## INTELLECTUAL PROPERTY RIGHTS TRANSFER AGREEMENT

---



Execution copy

This Agreement is made on 2nd day April 2015.

BETWEEN:

(1) **JSL STUDIO INTL, LLC**, a New York limited liability company whose registered office is at 55 Lumber Road #201, Roslyn, New York 11576, United States (the "**Assignor**");

(2) **Styleline Studios International Limited**, a company incorporated under the laws of Hong Kong with company number 2194884 whose registered office is at 42/F, Bank of China Tower, 1 Garden Road, Central, Hong Kong (the "**Assignee**"); and

(3) **Jay Steven Litvack**, a citizen of the United States of America (American passport no. ███████), of 135 Crescent Lane, Roslyn Heights, New York, 11577 (the "**Guarantor**").

together referred to as the "**Parties**" or singly as a "**Party**"

RECITALS:

(A) The Assignor owns the Intellectual Property Rights to the Trade Mark and is the applicant of the US Trademark Application.

(B) The Guarantor is the sole legal and beneficial owner of the Assignor.

(C) The Assignee is a company limited by shares incorporated on 22 January 2015 under the laws of Hong Kong.

(D) With the agreement and cooperation of the Guarantor, the Assignor wishes to assign and the Assignee wishes to purchase the entire beneficial and legal rights of all Intellectual Property Rights subsisting in the Trade Mark and the US Trademark Application on the terms and conditions as set out in this Agreement.

IT IS HEREBY AGREED as follows:

1. **DEFINITIONS AND INTERPRETATION**

    1.1. Unless otherwise provided herein, the terms below shall have the following meanings:

    (a) "**Assigned Rights**" has the meaning ascribed under Clause 2.1.

    (b) "**Business Day**" means a day other than a Saturday or Sunday on which banks are open for business in Hong Kong.

    (c) "**Company Group**" means collectively the Company and any of its subsidiaries as may be incorporated and/or held by the Company from time to time.

    (d) "**Consideration**" has the meaning ascribed under Clause 2.1.

    (e) "**Hong Kong**" means the Hong Kong Special Administrative Region of the People's Republic of China.

    (f) "**Intellectual Property Rights**" means any trademark, pending trademark application, patent, pending patent application, know-how, registered and unregistered design,




copyright, trade secrets, licences relating to any of the above or other similar industrial or commercial rights owned and possessed by the Company, including the Trade Mark.

(g) "**Joint Venture and Shareholders' Agreement**" means the Joint Venture and Shareholders' Agreement entered into between the Assignee, the Guarantor, Dimitri Mavridakis and Tina Ey-Vean Liu on even date.

(h) "**Trade Mark**" means the J/Slides trademark owned by the Assignor and is the subject of the US Trademark Application.

(i) "**US**" means the United States of America.

(j) "**US Trademark Application**" means the US Trademark Application No. 86384358 for the mark "J/Slides" filed by JSL Studio Intl, LLC and approved by the US Patent and Trademark Office for publication as at 23 January 2015, with Trademark Snap Shot Publication Stylesheet appended under Schedule 1 hereto.

1.2. Any reference in this Agreement to a statutory provision shall include that provision and any regulations made in pursuance thereof as from time to time modified or re-enacted, whether before or after the date of this Agreement.

1.3. The headings in this Agreement are inserted for convenience only and shall not affect the construction of this Agreement.

(a) Any reference in this Agreement to "**this Agreement**" includes all amendments, additions, and variations thereto agreed between the Parties hereto.

(b) Unless the context otherwise requires, words importing the singular shall include the plural and vice versa; words importing a specific gender shall include the other genders (male, female or neuter), and "**person**" shall include an individual, corporation, company, partnership, firm, trustee, trust, executor, administrator or other legal personal representative, unincorporated association, joint venture, syndicate or other business enterprise, any governmental, administrative or regulatory authority or agency (notwithstanding that "**person**" may be sometimes used herein in conjunction with some of such words), and their respective successors, legal personal representatives and assigns, as the case may be, and pronouns shall have a similarly extended meaning.

2. **ASSIGNMENT**

2.1. In consideration of the sum of US$ 150,000 (the "**Consideration**") to be paid in the manner as described under Clause 2.3, the Assignor shall assign to the Assignee within ten (10) Business Days from the date of signing of this Agreement absolutely with full title guarantee, all its right, title and interest in and to the Trade Mark and the US Trademark Application (the "**Assigned Rights**") which subsists or will subsist now or in the future in the US, including:

(a) rights in get-up and trade dress, goodwill and the right to sue for passing off or unfair competition attaching to the Trade Mark and in respect of the Business relating to the Styleline Studios Products where the Trade Mark shall be used;

(b) all rights to apply for and be granted registrations, renewals or extensions of, and rights to claim priority from, the Trade Mark anywhere in the world;

(c) all similar or equivalent rights or forms of protection under statutes or common law; and

    (d)    the right to bring, make, oppose, defend and appeal proceedings, claims or actions and obtain relief (and to retain any damages recovered) in respect of any infringement, or any other cause of action arising from ownership, of the Trade Mark whether occurring before, on or after the date of this Agreement.

2.2.    Within the same period as stated under Clause 2.1, the Assignor shall instruct the US Attorney of Record for the US Trademark Application to file all forms for the recording of the assignment of the full ownership of the US Trademark Application to the Assignee as required by the US Patent and Trademark Office.

2.3.    The Assignee shall pay the Consideration to the Assignor within five (5) Business Days from the date on which the Assignor provides all documentary proof evidencing the complete assignment and transfer of the Assigned Rights to the Assignee in compliance with the terms and conditions of this Agreement to the satisfaction of the Assignee.

3.    REPRESENTATIONS AND WARRANTIES

3.1.    The Assignor represents and warrants that:

    (a)    the Assignor is the sole legal and beneficial owner of, and owns all the rights and interests in, the Assigned Rights;

    (b)    the Assignor has not licensed or assigned any of the Assigned Rights;

    (c)    the Assigned Rights are free from any security interest, option, mortgage, charge or lien;

    (d)    the Assignor is unaware of any infringement or likely infringement of any of the Assigned Rights;

    (e)    so far as the Assignor is aware, all the Assigned Rights are valid and subsisting and there are and have been no claims, challenges, disputes or proceedings, pending or threatened, in relation to the ownership, validity or use of any of the Assigned Rights;

    (f)    exploitation of the Assigned Rights will not infringe the rights of any third party;

    (g)    the Assignor has not, prior to or as of the date of this Agreement, made any application for the registration of the Trade Mark anywhere in the world other than the US Trademark Application and that if he has, in breach of this representation, made any such application or obtained any registered trademark pursuant to such application anywhere in the world other than the US, the Guarantor shall, in addition to being liable for any remedy for the breach of this Clause 3(g), promptly at his own expense cause and procure the Assignor to assign to the Assignee such trade mark application and/or registered trade mark, including performing (or procuring the performance of) all further acts and things, and executing and delivering (or procuring the execution or delivery of) all further documents required to vest in the Assignee the full benefit of the right, title and interest of such application and registered trade mark.

4.    GUARANTEE AND INDEMNITY

4.1.    The Assignor agrees to indemnify and keep indemnified the Assignee against all liabilities, costs, expenses, damages and losses (including but not limited to any direct, indirect or consequential losses, loss of profit, loss of reputation and all interest, penalties and legal costs (calculated on a full indemnity basis) and all other reasonable professional costs and expenses)



suffered or incurred by the Assignee arising out of or in connection with any breach of the representations and warranties contained in Clause 3 or in connection with any failure of the Assignor to perform or discharge any of its obligation or liabilities in respect of the Assigned Rights. The Guarantor unconditionally guarantees the full and prompt payment of all of the indemnification obligations of the Assignor owed to the Assignee solely related to the breach by the Assignor of its representations and warranties contained in Clause 3. This guarantee shall not cover amounts for which the Assignor may be liable in connection with any other breach. The Guarantor's guarantee is a guarantee of payment and not a guarantee of performance.

4.2. This indemnity shall apply whether or not the Assignee has been negligent or at fault.

4.3. If a payment due from the Assignor under this clause is subject to tax (whether by way of direct assessment or withholding at its source), the Assignee shall be entitled to receive from the Guarantor such amounts as shall ensure that the net receipt, after tax, to the Assignee in respect of the payment is the same as it would have been were the payment not subject to tax.

5. **FURTHER ASSURANCE**

5.1. The Assignor shall perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution or delivery of) all further documents, required by law or which the Assignee requests, to vest in the Assignee the full benefit of the right, title and interest assigned to the Assignee under this Agreement, including:

(a) registration of the Assignee as applicant or (as applicable) proprietor of the Assigned Rights; and

(b) assisting the Assignee in obtaining, defending and enforcing the Assigned Rights.

5.2. The Assignor shall irrevocably appoint the Assignee to be its attorney in its name and on its behalf to execute documents, use the Assignor's name and do all things which are necessary or desirable for the Assignee to obtain for itself or its nominee the full benefit of this clause. A certificate in writing, signed by any director or the secretary of the Assignee or by any person appointed in accordance with Clause 5.4(c) that any instrument or act falls within the authority conferred by this Agreement shall be conclusive evidence that such is the case so far as any third party is concerned.

5.3. This power of attorney is irrevocable as long as any of the Assignor's obligations under this Agreement remain undischarged.

5.4. Without prejudice to Clause 5.2, the attorney may, in any way it thinks fit and in the name and on behalf of the Assignor:

(a) take any action that this Agreement requires the Assignor to take;

(b) exercise any rights which this Agreement gives to the Assignor; and

(c) appoint and remove one or more substitute attorneys with full power as the Assignor's attorney on terms that the attorney thinks fit.

5.5. The Assignor must ratify and confirm everything that the attorney and any substitute attorney does or arranges using the powers granted under this clause.

5.6. The Assignor shall not, unless with the written consent of, or in the course of a business association with, the Assignee, use the Trade Mark in any industry or commerce concerned wholly or partly with the goods manufactured, marketed and distributed by the Company Group,




whether directly or indirectly, and on his own behalf or on behalf of, or in conjunction with, any firm, company or person.

5.7. For the avoidance of doubt and without prejudice to the generality of the assignment contained in Clause 2, the Assignor agrees and acknowledges that the Assignee shall have the right to use the Trade Mark on their own or in combination with any other words, characters, signs, or figurative elements, and in any form, style or variation.

## 6. WAIVER

6.1. No failure or delay by a Party to exercise any right or remedy provided under this Agreement or by law shall constitute a waiver of that or any other right or remedy, nor shall it prevent or restrict the further exercise of that or any other right or remedy. No single or partial exercise of such right or remedy shall prevent or restrict the further exercise of that or any other right or remedy.

## 7. ENTIRE AGREEMENT

7.1. Other than those terms and conditions agreed under the Joint Venture and Shareholders' Agreement, this Agreement constitutes the entire agreement between the Parties and supersedes and extinguishes all previous agreements, promises, assurances, warranties, representations and understandings between them, whether written or oral, relating to its subject matter.

7.2. Other than those terms and conditions agreed under the Joint Venture and Shareholders' Agreement, each Party agrees that it shall have no remedies in respect of any statement, representation, assurance or warranty (whether made innocently or negligently) that is not set out in this Agreement. Each Party agrees that it shall have no claim for innocent or negligent misrepresentation or negligent misstatement based on any statement in this Agreement.

## 8. VARIATION

This Agreement may be amended, and any provision hereof may be waived, only by written agreement executed or signed by and between the Parties hereto.

## 9. SEVERANCE

9.1. If any provision or part thereof of this Agreement is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part thereof shall be deemed deleted. Any modification to or deletion of a provision or part thereof under this clause shall not affect the validity and enforceability of the rest of this Agreement.

9.2. If one Party gives notice to the other of the possibility that any provision or part thereof of this Agreement is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to amend such provision if necessary so that, as amended, it is legal, valid and enforceable, and, to the greatest extent possible, achieves the intended commercial result of the original provision.

## 10. COUNTERPARTS

10.1. This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute a duplicate original, but all the counterparts shall together constitute the one Agreement.

## 11. THIRD PARTY RIGHTS



Execution copy

11.1. No one other than a Party to this Agreement, their successors and permitted assignees, shall have any right to enforce any of its terms.

## 12. NOTICES

12.1. All notices and communications or legal process hereunder shall be in writing and addressed to the other Party hereto at the address hereinbefore in this Agreement set out or at such other address as shall be so notified in writing to the other by such Party that is giving notice of its change of address. All notices, communications or legal processes hereunder shall be deemed to be received upon delivery or, if mailed by prepaid postage, registered or double registered (air mail if international), seven (7) days after deposit in the mail. Any notice or communication may be given or made by by facsimile transmission and, subject to confirmation of transmission, shall be deemed to have been received when despatched.

## 13. MISCELLANEOUS PROVISIONS

13.1. Neither this Agreement, nor any of the rights or obligations hereunder, shall be assigned or delegated by either Party hereto without the prior written consent of the other Party.

13.2. In the event of any conflict between the provisions of this Agreement and the Joint Venture and Shareholders Agreement, so far as the sale, assignment and transfer of the Assigned Rights are concerned, the provisions of this Agreement shall prevail.

13.3. Each Party to this Agreement shall bear its own legal and other professional costs and expenses in connection with the negotiation, preparation and implementation of this Agreement. The Parties acknowledge that Messrs. Winston & Strawn is acting on behalf of the Assignee in the preparation, negotiation and execution of this Agreement and that the Assignor and the Guarantor have been advised to seek independent legal advice and have been given ample opportunity to do so.

## 14. GOVERNING LAW

14.1. This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the law of Hong Kong.

## 15. JURISDICTION

15.1. Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (HKIAC) under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The arbitration shall be conducted in Hong Kong before a single arbitrator in the English language.

15.2. The Parties appoint Brilliant Yield Consultants Limited, Room M202, Haleson Building, 1 Jubilee Street, Central, Hong Kong (or any individual or corporate entity which is acting as the company secretary of the Company from time to time), to accept service on their behalf of any arbitration proceedings which may be commenced by any Party pursuant to Clause 15.1. If for any reason the agent named above (or its successor) no longer serves as agent of the Parties for this purpose, the Assignee shall promptly appoint a successor agent in Hong Kong and notify the other Parties, provided that until the Parties receives such notification, they shall be entitled to treat the agent named above (or its said successor) as the agent of the Parties for the

purposes of this clause. The Parties agrees that any such legal process shall be sufficiently served on it if delivered to such agent for service at his address for the time being in Hong Kong. The Parties agree that the parties commencing arbitration proceedings against either the Assignor or the Guarantor shall send a copy of the notice in respect of the same to Wexler Lehrer & Kaufman PLLC by electronic mail and registered post and the parties commencing arbitration proceedings against the Assignee shall send a copy of the notice in respect of the same to Messrs. Winston & Strawn by electronic mail and registered post.

This document has been executed as an Agreement and is delivered and takes effect on the date stated at the beginning of it.

*[The rest of this page is intentionally left blank.]*



Execution copy

IN WITNESS of which the Parties or their duly authorized representatives have executed this Agreement.

Signed by
For and on behalf of
JSL Studio Intl LLC
in the presence of:

Witness name: Matthew B. Lehrer, ESQ.
Witness address: 708 3rd Avenue, 5mFL
NY, NY 10017

Signed by
Jay Steven Litvack
in the presence of:

Witness name: Matthew B. Lehrer, ESQ.
Witness address: 708 3rd Avenue, 5mFL
NY, NY 10017

Signed by
For and on behalf of
Styleline Studios International Limited
in the presence of:

Witness name:
Witness address:

Execution copy

Execution copy

IN WITNESS of which the Parties or their duly authorized representatives have executed this Agreement.

Signed by )
For and on behalf of )
JSL Studio Intl LLC )
in the presence of: )
)
)

Witness name:
Witness address:

Signed by )
Jay Steven Litvack )
in the presence of: )
)
)
)

Witness name:
Witness address:

Signed by )
For and on behalf of )
Styleline Studios International Limited )
in the presence of: )
)
)

Witness name: Chung-Shin Liu
Witness address:

No. 130 Yong-Tai Rd., Houjie Town Dongguan City, Guangdong Province, China