# APPENDIX B

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Settlement Agreement") is made and entered into this ___ day of October, 2024 (the "Effective Date"), by and between Hilldun Corporation ("Plaintiff"), on the one hand, and Styleline Studios, LLC ("Styleline-NY"), Dimitrios Mavridakis a/k/a Dimitri Mavridakis ("Mavridakis"), and Tina Ey-Vean Liu ("Liu," together with Styleline-NY and Mavridakis, collectively, the "LMS Defendants"), and Styleline Studios International Limited ("Styleline-HK"), on the other hand. Plaintiff, the LMS Defendants and Styleline-HK are collectively referred to herein as the "Parties," and each, individually, as a "Party."

## RECITALS

**WHEREAS**, Plaintiff claims that Plaintiff and Styleline-NY entered into a purported "Discount Factoring Agreement" dated June 12, 2015, which Plaintiff claims was executed in January 2016 (the "Factoring Agreement"), and the other agreements, documents and instruments executed and/or delivered in connection therewith (collectively, the "Financing Agreements") pursuant to which Plaintiff advanced sums secured by Styleline-NY's assets;

**WHEREAS**, the LMS Defendants deny that the Factoring Agreement is a valid and enforceable agreement, and claim that Jay Litvack lacked authority to execute the Factoring Agreement on behalf of Styleline-NY;

**WHEREAS**, Plaintiff has alleged that the sums advanced pursuant to the Factoring Agreement were and are required to be repaid by Styleline-NY, are past due, and are secured by (i) certain collateral, (ii) a joint personal guarantee purportedly executed by Mavridakis and Liu dated June 12, 2015 in favor of Plaintiff (the "Mavridakis-Liu Guaranty"), and (iii) a joint personal guarantee dated June 12, 2015 by Jay Litvack and Lillian Litvack (individually and collectively, jointly and severally, the "Litvacks") in favor of Plaintiff (the "Litvack Guaranty");

**WHEREAS**, on May 6, 2024, Plaintiff commenced an action against the LMS Defendants and the Litvacks in the Supreme Court of the State of New York, County of New York (the "New York Supreme Court"), under Index Number 652334/2024 (the "Supreme Court Action") by filing a Complaint (the "Complaint") asserting, among other claims, claims for breach of the Factoring Agreement, breach of the Mavridakis-Liu Guaranty, breach of the Litvack Guaranty, account stated, replevin, and unjust enrichment, and seeking to recover $5,926,497.60 plus fees, costs, expenses, and interest, as well as claims that Plaintiff is entitled to exercise certain rights with respect to its alleged collateral under the Factoring Agreement, including, without limitation, the trademark J/SLIDES, which is registered in the United States, the European Union, Japan, Korea, Canada, China, the United Kingdom, and Hong Kong, along with the goodwill of the business symbolized by that trademark, all applications and registrations of that trademark (including, without limitation, Registration No. 4746858 filed with the United States Patent and Trademark Office), and all claims, rights and interests arising under that trademark, including, without limitation, all common law rights in that trademark (collectively, the "Mark"), together with the proceeds thereof, and Styleline-NY's assets, as well as other relief;

8165137.11

**WHEREAS**, Plaintiff claims, and the LMS Defendants dispute, that, as of September 25, 2024, the amount owed under the Factoring Agreement and the Mavridakis-Liu Guaranty was $5,948,287.09 (the "Statement Amount"), plus fees, costs and expenses, and that fees, costs, expenses and interest have accrued and are continuing to accrue under the Factoring Agreement;

**WHEREAS**, as reflected in Otterbourg P.C.'s bills to Plaintiff issued to date, Plaintiff had incurred $579,329.88 in bills for attorneys' fees and related costs and expenses, billed through August 31, 2024, for which Plaintiff also claims, and the LMS Defendants dispute, that Styleline-NY is obligated to Plaintiff under the Factoring Agreement and Liu and Mavridakis are obligated to Plaintiff under the Mavridakis-Liu Guaranty (the "Billed Fees"), and the LMS Defendants further maintain that such fees and costs are excessive, unreasonable, and unrecoverable;

**WHEREAS**, Plaintiff claims, and the LMS Defendants dispute, that Plaintiff has incurred, and is continuing to incur, additional attorneys' fees and related costs and expenses for which Styleline-NY is liable to Plaintiff including, without limitation, additional attorneys' fees and related costs and expenses that have not yet been billed to Plaintiff, for which Plaintiff claims, and the LMS Defendants dispute, that Styleline-NY is obligated to Plaintiff under the Factoring Agreement and Liu and Mavridakis are obligated to Plaintiff under the Mavridakis-Liu Guaranty (the "Additional Fees," together with the Statement Amount and the Billed Fees, collectively, the "Claimed Amount");

**WHEREAS**, the LMS Defendants dispute, among other things, (i) the validity of the Factoring Agreement and Mavridakis-Liu Guaranty; (ii) the reasonableness, accuracy and appropriateness of the sums sought in the Complaint; and (iii) Plaintiff's right to the Mark or any proceeds or profits therefrom, and the LMS Defendants and Styleline-HK maintain that the Mark is owned by Styleline-HK;

**WHEREAS**, on July 25, 2024, Styleline-NY filed an Answer to the Complaint with affirmative defenses in the Supreme Court Action; Liu and Mavridakis filed an Answer to the Complaint with affirmative defenses; Jay Litvack filed an Answer to the Complaint with affirmative defenses in the Supreme Court Action; and Lillian Litvack filed an Answer to the Complaint with affirmative defenses in the Supreme Court Action;

**WHEREAS**, on August 14, 2024, Mavridakis and Liu filed a First Amended Answer, Affirmative Defenses, and Crossclaims in the Supreme Court Action against Jay Litvack for, among other things, alleged breaches of Styleline-NY's Operating Agreement, alleged breaches of a certain Joint Venture Agreement, alleged breaches of fiduciary duty, alleged fraud, an accounting, and declaratory judgment; and

**WHEREAS,** in order to avoid the costs and uncertainties of litigation, without any admission of liability or the absence thereof, while at the same time reserving and preserving any and all claims that Plaintiff and/or the LMS Defendants have or may have against Jay Litvack or Lillian Litvack (including, without limitation, under the Litvack Guaranty), the Parties have decided to resolve all claims that each has or may have against the other in an amicable manner without resort to further litigation on the terms set forth below;

8165137.11

**NOW, THEREFORE,** in consideration of the foregoing, the mutual promises of the Parties herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    **Recitals**.  The above recitals are incorporated into and made a substantive part of this Settlement Agreement.

2.    **Effective Date**.  This Settlement Agreement shall become effective upon the Effective Date.

3.    **Consideration**.

    **A.    Payment by Liu and Mavridakis to Plaintiff**.  As consideration for the promises made herein:

       i.    Liu and Mavridakis shall collectively pay to Plaintiff a total of Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00) (the "Liu-Mavridakis Settlement Amount").

       ii.    Liu and Mavridakis shall collectively pay the Liu-Mavridakis Settlement Amount over the course of eight (8) months in equal monthly installments of $343,750.00 (collectively, the "Installment Payments") due on the first business day of each month commencing November 1, 2024 and continuing until June 2, 2025.  Liu and Mavridakis may prepay the Liu-Mavridakis Settlement Amount in whole or in part without premium or penalty.

       iii.    Subject to Paragraph 3(A)(ii), the Liu-Mavridakis Settlement Amount, comprised of the Installment Payments, shall be paid to Plaintiff by wire or ACH transfer in immediately available funds as follows:

Bank:  Wells Fargo Bank, 520 Montgomery Street, San Francisco, CA 94104

Account Number:  ▉▉▉▉▉

ACH and Wire Routing Number:  ▉▉▉▉▉

SWIFT/BIC Code:  ▉▉▉▉▉

Reference:  JSL.

       iv.    Liu and Mavridakis shall be jointly, severally, directly, absolutely and unconditionally liable to Plaintiff for the Installment Payments and shall be required to make the Installment Payments on the dates on which they are due as set forth above, without offset, defense or counterclaim of any kind or nature.

3

8165137.11

v.    Any late payment shall bear interest at a rate of 9% per annum, which shall accrue daily and be compounded annually. In addition, if Liu or Mavridakis in their individual capacity either voluntarily file, or are otherwise subject to, any bankruptcy, liquidation, insolvency or similar proceeding under the laws of the United States or any state or local jurisdiction thereof or of any foreign jurisdiction (whether such proceeding is commenced or pending in the United States (or any state or local jurisdiction thereof) or in any foreign jurisdiction), then the outstanding amount of the Liu-Mavridakis Settlement Amount and all unpaid Installment Payments shall be accelerated and be immediately due and payable without notice or demand and interest shall accrue on the then outstanding amount of the Liu-Mavridakis Settlement Amount at a rate of 9% per annum, computed daily and compounded annually.

**B.    Rescission of Payment Demand by Plaintiff to Styleline-NY's Present and Former Customers**. As consideration for the promises made herein, Plaintiff represents that (a) on or about September 17, 2024, Plaintiff sent its September 17, 2024 notice, or any other substantially similar notice (collectively, the "Payment Demand Notice") requesting that payments allegedly due to Styleline-NY, BSS Creative Groupe Inc., d/b/a Black Suede Studio, be made to Plaintiff, as Styleline-NY's secured creditor by email and First Class Mail to the email addresses and mailing addresses shown in Exhibit A hereto, and (b) Plaintiff has sent the Notice attached hereto as Exhibit B (the "Rescission Notice") by email and by First Class Mail to the email addresses and mailing addresses in Exhibit A; and (c) Plaintiff has not and will not send any substantively similar notices to the Payment Demand Notice to any of Styleline-NY's present or former customers, or Styleline-HK's present or former customers including, without limitation, those customers identified in Exhibit A.

**C.    Liquidation of Existing Inventory**. As consideration for the promises made herein,

i.    The LMS Defendants and Styleline-HK shall permit: (a) Plaintiff and its agents, representatives or designees, (b) Jay Litvack, acting for the benefit of Plaintiff, and (c) any receiver, trustee or liquidator (a "Receiver") appointed in the pending dissolution proceeding titled *Mavridakis and Liu v. Litvack, for the Dissolution of Styleline Studios, LLC pursuant to Limited Liability Company Law § 702 and for related relief*, Index No. 154031/2024 (Sup. Ct. N.Y. County) (the "Dissolution Proceeding"), acting for the benefit of Plaintiff, at Plaintiff's reasonable expense, to sell or otherwise dispose of the existing inventory owned by Styleline-NY and to collect the proceeds thereof, including, without limitation, (x) any inventory referred to in Judge Merchant's Memorandum and Order dated August 16, 2024 (the "Preliminary

4

Injunction Order"), and issued in the action pending in the United States District Court for the Eastern District of New York titled *Styleline Studios International Limited v. Litvack*, Case No. 2:24-cv-1192 (E.D.N.Y.) (the "Trademark Action"), and/or in the proceedings that resulted in the entry of the Preliminary Injunction Order, and (y) any inventory held or owned by Styleline-NY bearing the Mark and manufactured by either Styleline-HK or Universal International Max Limited, and specifically including any inventory currently held in warehouses of Bergen Logistics (and/or its affiliates, including, without limitation, Bergen Shippers Corp.), Pasadena Services and Sobel Network Shipping, and any proceeds of any of the foregoing in clauses (x) and (y) (including, without limitation, any accounts or accounts receivable pertaining to such inventory) (collectively, the "Existing Inventory"); provided, however, that such liquidation efforts by Jay Litvack acting for the benefit of Plaintiff shall be limited to the sale or other disposition of the Existing Inventory on Styleline-NY's e-commerce platform at https://jslidesfootwear.com/. All of the foregoing shall only be permitted for the period commencing on the Effective Date and continuing through and including the date that is 245 days after the Effective Date (the "Existing Inventory Liquidation Period"); provided, however, that (i) the Existing Inventory Liquidation Period shall be tolled during the period when Plaintiff (or its representatives, agents or designees) is stayed or otherwise barred from exercising its rights with respect to the Existing Inventory by judicial or arbitral order, operation of law, action or inaction of a Receiver, or force majeure event preventing the use of Styleline-NY's e-commerce platform at https://jslidesfootwear.com/ to sell or otherwise dispose of the Existing Inventory or otherwise preventing the sale or disposition of the Existing Inventory by or for the benefit of Plaintiff as permitted herein, and (ii) upon the request of Plaintiff, the LMS Defendants and Styleline-HK may, in their discretion, extend the Existing Inventory Liquidation Period. Notwithstanding the foregoing, except as otherwise provided in this Settlement Agreement, the LMS Defendants shall not be responsible to take any steps or pay any expenses necessary for Styleline-NY's e-commerce platform at https://jslidesfootwear.com/ to remain operational and for Plaintiff to sell or dispose of the Existing Inventory (including, without limitation, payment of shipping or warehousing expenses). Nonpayment of such expenses by Plaintiff shall not constitute a basis for tolling the Existing Inventory Liquidation Period. For the avoidance of doubt, the termination of the Existing Inventory Liquidation Period shall not affect or apply to the remittance or collection of proceeds from any sale or other disposition of the Existing Inventory during the Existing Inventory Liquidation Period. The LMS Defendants and Styleline-HK acknowledge and agree that the Existing Inventory is being sold or otherwise disposed of to pay the debt allegedly owed by Styleline-NY to Plaintiff under the Financing

5

Agreements but only up to the amount of the proceeds from the sale or other disposition of the Existing Inventory during the Existing Inventory Liquidation Period (the "Existing Inventory Amount"). To the extent available to Plaintiff from the warehouse or warehouses where the Existing Inventory is maintained, within thirty (30) days after the Effective Date, Plaintiff shall exercise reasonable efforts to advise the LMS Defendants of the contents of the Existing Inventory and shall thereafter exercise reasonable efforts to update the LMS Defendants every thirty (30) days thereafter during the Existing Inventory Liquidation Period as to the items (including the style and quantity of each product) sold and the items which remain in the Existing Inventory, and the sums collected from such sales. If any Party breaches any obligations under this Paragraph 3(C)(i) of this Agreement, then, upon ten (10) days' notice to cure that breach, the Party that received the notice shall cure any such breach.

ii.    The LMS Defendants and Styleline-HK shall take all reasonable actions so that neither they, nor the New York Supreme Court in the Dissolution Proceeding, nor any Receiver appointed in the Dissolution Proceeding, nor any other person or entity interfere with Plaintiff's rights to sell the Existing Inventory during the Existing Inventory Liquidation Period as permitted by Paragraph 3(C)(i). If any Receiver appointed in the Dissolution Proceeding or Styleline-NY comes into possession of proceeds from the sale of the Existing Inventory during the Existing Inventory Liquidation Period, the LMS Defendants and Styleline-HK shall reasonably cooperate with Plaintiff so that such proceeds will be turned over to Plaintiff.

iii.    The LMS Defendants and Styleline-HK hereby waive any right, interest or claim to the proceeds from the sale or other disposition of the Existing Inventory, to the extent such sale or disposition was permitted in Paragraph 3(C)(i) and hereby consent to Jay Litvack, or Plaintiff's agents, representatives or designees that conduct or participate or assist in such sale or other disposition of the Existing Inventory instead of Jay Litvack, or any Receiver that conducts or participates or assists in such sale or other disposition of the Existing Inventory instead of Jay Litvack, delivering those proceeds to Plaintiff in an account that is subject to a Deposit Account Control Agreement with Plaintiff, or Plaintiff receiving those proceeds. The LMS Defendants make no representations regarding, and assume no responsibility or liability for, Jay Litvack's failure, or the failure of Plaintiff's agents, representatives, or designees, to remit all or any portion of such proceeds to Plaintiff as contemplated herein.

D.    **Limited License to Use the Mark**. As consideration for the promises made herein, including, without limitation, those set forth in Paragraph 3(E),

6

Styleline-HK hereby grants Plaintiff and its agents, employees and representatives a valid and enforceable limited, irrevocable, non-exclusive, royalty-free license to use the Mark solely in connection with the sale or other disposition of the Existing Inventory during the Existing Inventory Liquidation Period for the benefit of Plaintiff in accordance with Paragraph 3(C) of this Settlement Agreement (the "Mark License").  In the event that three (3) written complaints are made by purchasers of any Existing Inventory alleging that Plaintiff and/or its agents, representatives or designees (including Jay Litvack) failed to ship inventory in a timely manner or failed to respond to customer inquiries, then, upon notice from the LMS Defendants, Plaintiff shall exercise reasonable efforts to address the issue.

E. **Confirmation of Security Interest; Partial Release of Security Interest**. As consideration for the promises made herein, including, without limitation, those set forth in Paragraphs 3(A)-(D), and in connection with the releases and covenants not to sue set forth in Paragraphs 5(A)-(D) below, as of the Effective Date, Plaintiff: (i) releases any security interest in or lien on any assets or properties of Styleline-NY under the Factoring Agreement (the "Collateral"), except (x) for the security interests and liens of Plaintiff in the Existing Inventory and the proceeds thereof in any form whatsoever (including, without limitation, as accounts, accounts receivable or cash proceeds) and, (y) solely to the extent determined by Plaintiff to sell or otherwise dispose of the Existing Inventory, the security interest and liens of Plaintiff in the e-commerce platform at https://jslidesfootwear.com/, and (ii) releases any security interest or lien it had or may have on the Mark, except for the limited Mark License granted to Plaintiff in Paragraph 3(D) (such security interest and lien retained in the Collateral being referred to herein as the "Retained Collateral").  Styleline-NY and the other Parties hereto acknowledge and agree that the Retained Collateral shall continue to secure the Existing Inventory Amount.  Plaintiff shall (i) execute and deliver to counsel for the LMS Defendants the "Release of Trademark Security Interest" in the form attached hereto as Exhibit C; and (ii) within one (1) week of the Effective Date, file a UCC amendment to any UCC Financing Statements filed by Plaintiff against Styleline-NY to release its security interest in the Collateral, other than the Retained Collateral.  Proof of such partial release shall be emailed to the LMS Defendants and Styleline-HK upon Plaintiff's receipt thereof.  The LMS Defendants and Styleline-HK hereby covenant, represent and warrant that they have no, and shall not assert any, security interest, lien or claim to any of the Retained Collateral during the Existing Inventory Liquidation Period referred to in Paragraph 3(C), plus the fourteen (14) day period after the Existing Inventory Liquidation Period.  Within fourteen (14) days of the end of the Existing Inventory Liquidation Period, unless otherwise extended by the LMS Defendants and Styleline-HK, Plaintiff shall no longer maintain any security interest or lien on any collateral it had or may have under the

7

Factoring Agreement or provided herein over the Existing Inventory, and shall deliver to counsel for the LMS Defendants and Styleline-HK copies of filed UCC amendments terminating all interests, liens, and/or UCC Financing Statements of Plaintiff against Styleline-NY.

4.     **Discontinuance of the Supreme Court Action**.  Within seven (7) days after the Effective Date, (a) Plaintiff shall file in New York Supreme Court a Stipulation of Discontinuance in the form annexed hereto as <u>Exhibit D</u>, discontinuing all claims asserted by Plaintiff against Liu and Mavridakis in the Supreme Court Action with prejudice, which stipulation shall be signed by all Parties simultaneously with signing this Settlement Agreement (the "<u>Liu and Mavridakis Stipulation of Discontinuance</u>"), and (b) Plaintiff shall file in New York Supreme Court a Stipulation of Discontinuance without prejudice in the form annexed hereto as <u>Exhibit E</u> discontinuing all claims asserted by Plaintiff against Styleline-NY without prejudice, which stipulation shall be signed by all Parties simultaneously with signing this Settlement Agreement (the "<u>Styleline-NY Stipulation of Discontinuance without Prejudice</u>").  Within seven (7) days of payment in full to Plaintiff of the Liu-Mavridakis Settlement Amount, Plaintiff shall file in New York Supreme Court a Stipulation of Discontinuance in the form attached hereto as <u>Exhibit F</u> dismissing the claims asserted by Plaintiff against Styleline-NY with prejudice, which stipulation shall be signed by all Parties simultaneously with signing this Settlement Agreement (the "<u>Styleline-NY Stipulation of Discontinuance with Prejudice</u>," together with the Liu and Mavridakis Stipulation of Discontinuance and the Styleline-NY Stipulation of Discontinuance with Prejudice," collectively, the "<u>Stipulations of Discontinuance</u>").The Stipulations of Discontinuance shall not preclude any Party from seeking relief in connection with a breach of this Settlement Agreement.  The Parties shall cooperate in obtaining court approval of the Stipulation of Discontinuance in accordance with CPLR § 3217(b).

5.     **Releases and Covenant Not to Sue**.

A.     **Plaintiff's Release of Liu, Mavridakis, Styleline-HK, and Certain Related Parties**.  Subject to Paragraph 5(E) hereof, upon the Effective Date and except as to such rights or claims as may be created by this Settlement Agreement or any agreements executed pursuant to this agreement (including, without limitation, Liu and Mavridakis' obligation to make the Installment Payments, pay the Liu-Mavridakis Settlement Amount, comply with Paragraphs 3(A), 3(C), 3(D) and 3(E)), and in consideration of this Settlement Agreement, Plaintiff and all of its respective former and current agents, servants, subsidiaries, parent entities, affiliates, directors, officers, associates, managers, employees, consultants, shareholders, partners, members, owners, successors, predecessors, assigns, heirs, beneficiaries, executors, administrators, insurers, representatives, attorneys, accountants and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, hereby release and forever discharge Liu, Mavridakis, Styleline-HK, and each of their current and former agents, servants, employees, successors, predecessors, assigns, heirs, beneficiaries, executors, administrators, insurers, attorneys, accountants, and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, none of which shall include Jay Litvack or Lillian Litvack, from any and all claims, causes of action, demands, debts, obligations, damages or liability of any nature whatsoever, in both law or in equity, past or present, anticipated or unanticipated, known or unknown, accrued or unaccrued, from the beginning of the world to the Effective Date, including, but not limited to, Plaintiff's claims in the Complaint, related claims

8

which were or could have been asserted in the Supreme Court Action, or any claims to the Mark or proceeds of the Mark (except as otherwise provided or as granted in Paragraphs 3(D) and 3(E) hereof). The release set forth in this Paragraph 5(A) is general in nature, and is intended by the Parties to make this release as broad as applicable law permits, except as otherwise limited by the terms of this Settlement Agreement including, without limitation, the terms in Paragraph 5(E) hereof.

B.    **Liu, Mavridakis, and Styleline-HK's Releases of Plaintiff and Certain Related Parties**. Upon the Effective Date and except as to such rights or claims as may be created by this Settlement Agreement, Liu, Mavridakis, and Styleline-HK and all of their respective former and current agents, servants, employees, consultants, successors, predecessors, assigns, heirs, beneficiaries, executors, administrators, insurers, representatives, attorneys, accountants and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, and in consideration of this Settlement Agreement, hereby release and forever discharge Plaintiff and all of its respective former and current agents, servants, subsidiaries, parent entities, related entities, directors, officers, associates, managers, employees, consultants, shareholders, partners, members, owners, successors, predecessors, assigns, heirs, beneficiaries, executors, administrators, insurers, representatives, attorneys, accountants and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, from any and all claims, causes of actions, demands, debts, obligations, damages, or liability of any nature whatsoever, in both law or in equity, past or present, anticipated or unanticipated, known or unknown, accrued or unaccrued, from the beginning of the world to the Effective Date, including, but not limited to, claims which were or could have been asserted in the Supreme Court Action. The release set forth in this Paragraph 5(B) is general in nature, and it is intended by the Parties to make these releases as broad as applicable law permits, except as otherwise limited by the terms of this Settlement Agreement.

C.    **Plaintiff's Covenant Not to Sue Styleline-NY and Certain Related Parties**. Subject to Paragraph 5(E) hereof, upon the Effective Date, and except as to such rights or claims as may be created by this Settlement Agreement, Plaintiff and all of its former and current agents, servants, subsidiaries, parent entities, affiliates, directors, officers, associates, managers, employees, consultants, shareholders, partners, members, owners, successors, predecessors, assigns, heirs, beneficiaries, executors, administrators, insurers, representatives, attorneys, accountants and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, and in consideration of this Settlement Agreement, hereby covenant not to sue Styleline-NY, including any and all of each of its former and current agents (other than the Litvacks), servants (other than the Litvacks), subsidiaries, parent entities, officers (other than Jay Litvack), associates (other than the Litvacks), managers (other than the Litvacks), employees (other than the Litvacks), consultants (other than the Litvacks), members (other than the Litvacks), owners (other than the Litvacks), successors, predecessors (other than the Litvacks or any entity in which either of them may hold an interest), assigns, heirs, beneficiaries, executors, administrators, insurers, representatives (other than the Litvacks), attorneys, accountants and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, on any and all claims, causes of actions, demands, debts, obligations, damages, or liability of any nature whatsoever, in both law or in equity, past or present, anticipated or unanticipated, known or unknown, accrued or unaccrued, from the beginning of the world until the Effective Date, including, but not limited to, Plaintiff's claims in the Complaint, related claims which were or could have been asserted in the Supreme Court Action, or any claims to the Mark

or proceeds in connection with the Mark (except as otherwise provided or as granted in Paragraphs 3(D) and 3(E) hereof). In connection with the foregoing, Plaintiff shall neither intervene nor seek to intervene in any action between any of the LMS Defendants or Styleline-HK, on the one hand, and Jay Litvack, on the other hand.

D.     **Styleline-NY's Covenant Not to Sue Plaintiff and Certain Related Parties**. Subject to Paragraph 5(E) hereof, upon the Effective Date, and except as to such rights or claims as may be created by this Settlement Agreement or any agreement executed pursuant to this agreement, Styleline-NY and all of its former and current agents (other than the Litvacks), servants (other than the Litvacks), subsidiaries, parent entities, affiliates, related entities, directors (other than the Litvacks), officers (other than the Litvacks), associates (other than the Litvacks), managers (other than the Litvacks), employees (other than the Litvacks), consultants (other than the Litvacks), shareholders (other than the Litvacks), partners (other than the Litvacks), members (other than the Litvacks), owners (other than the Litvacks), successors, predecessors (other than the Litvacks or any entity in which either of them may hold an interest), assigns, heirs, beneficiaries, executors, administrators, insurers, representatives (other than the Litvacks), attorneys, accountants and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, and in consideration of this Settlement Agreement, hereby covenant not to sue Plaintiff and all of its respective former and current agents, servants, subsidiaries, parent entities, affiliates, related entities, directors, officers, associates, managers, employees, consultants, shareholders, partners, members, owners, successors, predecessors, assigns, heirs, beneficiaries, executors, administrators, insurers, representatives, attorneys, accountants and the assigns, heirs, beneficiaries and executors of any of the foregoing parties, on any and all claims, causes of actions, demands, debts, obligations, damages, or liability of any nature whatsoever, in both law or in equity, past or present, anticipated or unanticipated, known or unknown, accrued or unaccrued, from the beginning of the world to the Effective Date, including, but not limited to, claims which were or could have been asserted in the Supreme Court Action.

E.     **Reservation of Rights with Respect to Claims Against Jay Litvack and Lillian Litvack and Certain Related Parties**. Nothing in this Settlement Agreement (including without limitation, in Paragraphs 3(A)-(E), 4, 5(A)-(D) or in the Stipulation of Discontinuance) shall waive, or shall release or discharge Jay Litvack or Lillian Litvack or any of their agents, representatives, assigns, heirs, beneficiaries, administrators or executors (together with Jay Litvack and Lillian Litvack, collectively, the "Litvack Parties") from, any rights, claims, causes of action, demands or damages of the LMS Defendants, Styleline-HK, or Plaintiff, or constitute a covenant by the LMS Defendants, Styleline-HK, or Plaintiff not to sue any of the Litvack Parties on or for any claims, demands, rights, causes of action, agreements, debts, obligations, damages or liabilities (including, without limitation, any claims, demands, rights, causes of action, agreements, debts, obligations, damages or liabilities under the Factoring Agreement; the Litvack Guaranty; the "Pledge and Security Agreement" entered into by Jay Litvack, as "Pledgor" and Plaintiff, as "Pledgee," on or about December 13, 2022 (the "Pledge Agreement"); and/or the "Pledged Collateral Account Control Agreement," between Jay Litvack, as "Client," Plaintiff, as "Creditor," and Merrill Lynch, Pierce, Fenner & Smith Incorporated between November 30, 2022, and December 7, 2022 (the "Account Control Agreement")), all of which are hereby expressly reserved and preserved. The LMS Defendants, Styleline-HK, and Plaintiff shall retain all rights to continue any and all claims and causes of action in the Supreme Court Action or in any other action or

10

proceeding, as against any of the Litvack Parties, all of which are expressly reserved and preserved and none of which are waived.  Nothing herein shall be deemed in any way to impair, impede or reduce any obligations of any of the Litvack Parties under the Litvack Guaranty, the Pledge Agreement and/or the Account Control Agreement, or any other agreement, all of which are expressly reserved and preserved and none of which are waived.

6. **No Admission of Liability**.  This Settlement Agreement is not and shall not in any way be deemed to constitute an admission or evidence of any wrongdoing or liability, or of any violation of any federal, state or municipal statute, regulation, or principle of common law or equity on the part of any of the Parties, or the absence thereof, and all of the Parties expressly deny any wrongdoing or liability.  Rather, this Settlement Agreement constitutes the good faith settlement and release of all claims and is being entered into by the Parties solely to avoid the burden, expense, delay, and uncertainties of litigation.

7. **Negotiated Settlement Agreement and Construction**.  This Settlement Agreement is the product of negotiations among the Parties and therefore, the terms and conditions of this Settlement Agreement are not intended to be, and shall not be, construed against any Party as draftsman.

8. **Authority to Enter this Settlement Agreement**.  The Parties respectively hereby warrant and represent that the persons signing this Settlement Agreement on their behalf have full power and/or legal authority to sign for and bind the entities recited herein and to make the agreements set forth herein.  The Parties respectively warrant and represent that they have taken all necessary corporate or limited liability company action, as the case may be, to approve the making and performance of this Settlement Agreement and no further approval is necessary.

9. **Waiver**.  No waiver of any of the provisions of this Settlement Agreement shall be binding unless it is in writing and signed by authorized representatives of all Parties.  The waiver by any Party hereto of a breach or default under any of the provisions of this Settlement Agreement, or the failure of any Party on one or more occasions to insist on the strict enforcement of any provision of this Settlement Agreement, or the failure of any Party to exercise any right or privilege hereunder, shall not constitute or be construed as a waiver of any subsequent breach of default of a similar nature, or of any other provision, right, or privilege of this Settlement Agreement, and all such terms shall remain in full force and effect.

10. **Assistance of Counsel**.  The Parties acknowledge that they have been represented by counsel of their choosing in connection with the negotiation of this Settlement Agreement, have had ample opportunity to confer with said counsel prior to the execution hereof, and have had sufficient time to review this Settlement Agreement.  The Parties acknowledge that they have read and understand all of the terms and conditions contained herein, and that they enter into this Settlement Agreement with knowledge of its contents, of their own free will, voluntarily, and without duress.  No promises except as expressly set forth herein have been made to induce any person or entity to sign this Settlement Agreement.

11. **Entire Agreement**.  This Settlement Agreement, including the Recitals and the exhibits thereto, contains the entire agreement and complete settlement among the Parties and

11

8165137.11

supersedes, extinguishes, and replaces any and all prior or contemporaneous statements, promises, or agreements of any kind whatsoever between them, whether written or oral. Any and all prior or contemporaneous discussions and negotiations between the Parties have been and are merged and integrated into, and are superseded by, this Settlement Agreement. No Party hereto has relied on any statement or representation not expressly set forth herein.

12. **Illegality or Unenforceability of Provisions**. In the event that any one or more of the provisions contained in this Settlement Agreement or the releases shall for any reason be held by a court of competent jurisdiction in whole or in part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Settlement Agreement or the Parties' mutual releases. A reviewing court also shall have the authority to amend or "blue pencil" this Settlement Agreement so as to make it fully valid and enforceable.

13. **Governing Law, Jurisdiction, and Venue**. This Settlement Agreement shall be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to conflict of law principles. The Parties specifically and irrevocably consent to the jurisdiction and venue of the Supreme Court of the State of New York, County of New York and the United States District Court for the Southern District of New York, with respect to all matters arising out of, concerning, or connected in any way to this Settlement Agreement and its enforcement, and waive any objection based upon venue or forum or non conveniens with respect to an action arising out of, concerning or connected in any way to this Settlement Agreement that is commenced in any of those courts.

14. **Waiver of Personal Service**. Each Party waives personal service of any and all process upon him, her or it. Service on any Party shall be deemed good and sufficient (a) if sent or delivered to the Party upon which service is to be effected in compliance with Paragraph 18, entitled "Notices," or (b) if served in compliance with applicable law. The Parties hereby waive any right to trial by jury in any court with respect to any contractual, tortious, statutory or other type of claim, counterclaim, or cross-claim against any other Party arising out of, concerning, or connected in any way to this Settlement Agreement.

15. **Further Assurances**. The Parties each agree to execute such further and additional documents, instruments and writings as may be reasonably necessary, proper, required, desirable or convenient for the purpose of fully effectuating the terms and provisions of this Agreement and the exhibits hereto.

16. **Attorneys' Fees and Costs**. Each Party agrees to pay all of its own costs associated with the Supreme Court Action and this Settlement Agreement, including without limitation, his, her or its own attorney's fees. Should any dispute arise between the Parties with respect to this Settlement Agreement, the prevailing Party shall be entitled to recover from the non-prevailing Party his, her or its reasonable attorneys' fees, disbursements, and costs of suit incurred as a result of such dispute.

17. **Modifications Must Be In Writing**. This Settlement Agreement shall not be changed, modified, or terminated except by a writing signed by all of the Parties hereto.

12

8165137.11

18.    **Notices**.  Any notices that the Parties may wish to serve upon each other pursuant to this Settlement Agreement shall be served by (i) overnight mail or Federal Express, or registered mail and (ii) email, to the following firms and addresses (or most current addresses):

If to Plaintiff:    Hilldun Corporation
36 East 31st Street
New York, NY 10016
Attn.: Gary A. Wassner and Joshua W. Kapelman
Gary@Hilldun.com
Josh@Hilldun.com

With a copy to: Otterbourg P.C.
230 Park Avenue
New York, New York 10169
Attn: William M. Moran, Esq., and Andrew S. Halpern, Esq.
(212) 661-9100
wmoran@otterbourg.com
ahalpern@otterbourg.com

If to the LMS Defendants or Styleline-HK:

Dimitri Mavridakis
28 Stukley Road
West Bolton
Quebec
J0E 2T0
Canada
dimitrimavridakis@gmail.com

Tina Liu
25 A tower 2 Harbourside
1 Austin Road
West Kowloon
Hong Kong
tinaevliu@gmail.com

With a copy to: Moritt Hock & Hamroff LLP
400 Garden City Plaza
Garden City, New York 11530
Attn: Kelly D. Schneid, Esq. and Michael Schwab, Esq.
(516) 873-2000
kschneid@moritthock.com
mschwab@moritthock.com

13

8165137.11

and

Becker, LLC
2 Park Avenue, 20th Floor, Suite 2006
New York, New York 10016
Attn: Erik B. Derr, Esq.
(973) 422-1100
ederr@becker.legal

19.    **Successors and Assigns**.  This Settlement Agreement shall be binding on, and inure to the benefit of, each of the Parties and each of their respective successors, assigns, and representatives.

20.    **No Third Parties Benefitted**.  Except as expressly provided in Paragraph 19, this Settlement Agreement is solely for the benefit of the Parties and their respective successors, assigns, and representatives, and no other person shall have any right, benefit, priority or interest under, or because of the existence of, this Settlement Agreement.

21.    **Section Headings**.  The headings of this Settlement Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Settlement Agreement.

22.    **Counterparts**.  This Settlement Agreement may be executed in counterparts, all of which taken together shall constitute one and the same agreement, and signatures made and transmitted by facsimile, email or other electronic means shall be deemed to have the same force and effect as originals.

**IN WITNESS WHEREOF**, the Parties hereto have knowingly and voluntarily executed this Settlement Agreement as of the date set forth above.

**HILLDUN CORPORATION**


By:_____
Name: Gary Wassner
Title: Chief Executive Officer


**[SIGNATURES CONTINUE ON NEXT PAGE]**

14

8165137.11

**[SIGNATURES CONTINUED FROM PREVIOUS PAGE]**

_____

**DIMITROS MAVRIDAKIS**
**a/k/a DIMITRI MAVRIDAKIS**


_____

**TINA EY-VEAN LIU**


**STYLELINE STUDIOS, LLC**


By:_____
Name: Dimitros Mavridakis
a/k/a Dimitri Mavridakis
Title: Member


**STYLELINE STUDIOS INTERNATIONAL**
**LIMITED**


By:_____
Name: Tina Ey-Vean Liu
Title: Member and Chairperson

15

8165137.11